OPINION OF THE COURT
Harold Hyman, J.
Upon close examination and review of all motion papers, exhibits, legal memoranda, the affidavit of the Deputy Chief of Detectives for the Borough of Queens who was responsible for the undercover police fencing operation known as "Operation Fence”, and upon oral argument before this court on February 14, 1979, and the testimony presented at the hearing conducted on March 26, 1979 and May 4, 1979 concerning the publication of the Kirkman newspaper article, this court is of the opinion that the testimony, documents, and audio and *14 videotapes sought by plaintiffs’ notice dated January 8, 1979 are privileged and confidential matters which are immune from discovery and, at the very least, exempt from disclosure under the New York Freedom of Information Law.
An extensive recitation of the facts and legal arguments propounded by all parties, and in particular by the nonparty Police Department of the City of New York as the custodian of the "Operation 101” (known as "Operation Fence”) file, is unnecessary in view of this court’s exhaustive review in its memorandum decision dated June 29, 1979 (see Kwoczka v Cawley, NYLJ, July 9, 1979, p 14, col 5).
The movant has now supplied the court with an affidavit from an experienced police official with direct supervisory responsibility over the undercover fencing operation. Deputy Chief of Detectives Edwin Dreher was serving in Queens County at the time Operation Fence had been started in 1973. In his sworn statement, he sets forth that disclosure of the file on Operation Fence would identify and endanger co-operative informers and undercover agents who participated in the operation; impair recruitment of detectives for future undercover operations; publicize secret tricks and techniques; and inhibit the success of future police operations, and generally, law enforcement investigative efficiency. These observations most certainly warrant the due weight and consideration they deserve, coming from a high-ranking police official with intimate knowledge of the required preparation in staging this difficult undercover operation with all its nonroutine criminal investigative techniques and procedures. From his vantage point, the affiant is more than qualified to forewarn this court of the deleterious ramifications that disclosure would bring. His warnings are sufficiently convincing to show that the law enforcement process would be impeded and the public interest jeopardized by a release of this confidential information.
Besides demonstrating the need to keep the contents of the Operation Fence file and matters pertaining thereto confidential, the city has likewise demonstrated that there was never a conscious intent by the defendants to waive the whole breadth of the undercover operation. Although certain of the defendants may have been somewhat overzealous or thoughtless in offering the citizenry tidbits of information about this law enforcement undertaking, the public interest privilege belongs to the government and cannot be waived by unauthorized acts of its officers or agents (United States v Reynolds, 345 US 1, 7; *15 Dalton v Van Dien, 72 Misc 2d 287, 72 Misc 2d 292). Moreover, an examination of the newspaper article and other publications, offered by the plaintiff as proof of waiver of the claim of privilege, reveals nothing more than innocuous accounts of the circumstances surrounding the Kwoczka shooting. However, the authors, and thereby their readers, were not made privy to the sort of explicit and detailed descriptions of the unique investigative techniques and procedures that may have been revealed, but were not, by disclosure of property vouchers, audiotapes, videotapes, and other sensitive material contained in the file.
Furthermore, although Operation Fence may indeed have ceased operating some years ago, this court does not wish to inhibit similar law enforcement efforts in the future by establishing a precedent for discoverability of secret police files (Frankel v Securities & Exch. Comm., 460 F2d 813, cert den 409 US 889).
Finally, in view of the plaintiff’s primary causes of action, claiming negligence in failing to supply sufficient protective measures in the subject premises and in publishing sensitive information concerning the undercover operation which thereby allegedly exposed the plaintiff, as the prime participant, to personal danger, there has been little, if any, showing of relevancy or materiality of the vast material plaintiff is seeking to the issues involved in this litigation.
Accordingly, the motion for a protective order is granted and the plaintiff’s notice hereby vacated in its entirety.